UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

SHARON ELAINE BURLESON,

        Plaintiff,

    v.

SECURITY PROPERTIES
RESIDENTIAL, LLC, *et al.*,

        Defendants.

CASE NO. C18-0513RSL

ORDER REGARDING
PENDING MOTIONS

This lawsuit was filed in April 2018. Plaintiff alleges that she is African-American with "a left-side deficit" and that she has been charged over the course of her tenancy at Angeline Apartments "excessively and inordinately, higher rates for water, sewer, and trash services than other tenants that reside/resided at the apartment complex." Dkt. # 52 at 9. She disputed the bills, but was stymied in her efforts to ascertain how her bills were calculated because the billing company, American Utility Management, Inc. ("AUM"), refused to provide her with her individual usage, which plaintiff believes is a violation of Seattle Municipal Code ("SMC") 7.25. Plaintiff alleges that the excessive billing and refusal to provide relevant information were discriminatory and arose out of a civil conspiracy between the owner of the apartment

ORDER REGARDING
PENDING MOTIONS

building, the billing company, and six officers or employees of the corporate defendants.[1]

Currently pending before the Court are four motions:

(1) Defendants Security Properties Residential, LLC, and Amy Simpson's motion to dismiss plaintiff's Second Amended Complaint (Dkt. # 53);

(2) Defendant American Utility Management, Inc.'s motion to dismiss plaintiff's Second Amended Complaint (Dkt. # 54);

(3) Defendant Jennifer Spagnola's motion to dismiss plaintiff's Second Amended Complaint (Dkt. # 55); and

(4) Plaintiff's motion for leave to file a third amended complaint (Dkt. # 66).

The question for the Court on a motion to dismiss is whether the facts alleged in the complaint sufficiently state a "plausible" ground for relief. Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007).

> A claim is facially plausible when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged. Plausibility requires pleading facts, as opposed to conclusory allegations or the formulaic recitation of elements of a cause of action, and must rise above the mere conceivability or possibility of unlawful conduct that entitles the pleader to relief. Factual allegations must be enough to raise a right to relief above the speculative level. Where a complaint pleads facts that are merely consistent with a defendant's liability, it stops short of the line between possibility and plausibility of entitlement to relief. Nor is it enough that the complaint is factually neutral; rather, it must be factually suggestive.

Somers v. Apple, Inc., 729 F.3d 953, 959-60 (9th Cir. 2013) (internal quotation marks

---

[1] The claims against Michael Miller, Bob Malpasuto, Dave Carpenter, and Dan Witte were dismissed for lack of personal jurisdiction on September 5, 2018. Dkt. # 57. Plaintiff has acknowledged that dismissal by deleting those individuals from the caption of her submissions.

ORDER REGARDING
PENDING MOTIONS

-2-

and citations omitted). All well-pleaded allegations are presumed to be true, with all reasonable inferences drawn in favor of the non-moving party. In re Fitness Holdings Int'l, Inc., 714 F.3d 1141, 1144-45 (9th Cir. 2013). If the complaint fails to state a cognizable legal theory or fails to provide sufficient facts to support a claim, dismissal is appropriate. Shroyer v. New Cingular Wireless Servs., Inc., 622 F.3d 1035, 1041 (9th Cir. 2010).

Having considered the allegations of the Second Amended Complaint, the submissions of the parties, and the remainder of the record, the Court finds as follows:

**A. Fourteenth Amendment, Equal Protection Clause**

Section 1983 provides a mechanism for enforcing individual rights secured by the United States Constitution and imposes civil liability on "[e]very person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia," deprives or causes another to be deprived of a constitutional right. The "color of law" requirement of § 1983 excludes from the statute's reach purely private conduct, no matter how discriminatory or wrongful. See Am. Mfrs. Mut. Ins. Co. v. Sullivan, 526 U.S. 40, 50 (1999). The conduct of which plaintiff complains must be "fairly attributable to the state" before liability will attach under § 1983. Filarsky v. Delia, 566 U.S. 377, 383 (2012).

Private individuals and entities such as the defendants in this case can be "state actors" in certain circumstances:

> "Action taken by a private individual may be 'under color of state law' where there is 'significant' state involvement in the action." Howerton v. Gabica, 708 F.2d 380, 382 (9th Cir. 1983). The extent of state involvement in the action is a question of fact. Id. at 383. "The [Supreme] Court has articulated a number of tests or factors to determine when state

action is 'significant.'" Id. at 382-383 (collecting cases). Under the joint action test, a private party acts under color of state law if "he is a willful participant in joint action with the State or its agents." Dennis v. Sparks, 449 U.S. 24, 27 [] (1980). Under the governmental nexus test, a private party acts under color of state law if "there is a sufficiently close nexus between the State and the challenged action of the regulated entity so that the action of the latter may be fairly treated as that of the State itself." Jackson v. Metropolitan Edison Co., 419 U.S. 345, 351 [] (1974); cf. Edmonson v. Leesville Concrete Co., 500 U.S. 614 [] (1991) (constitutional deprivation caused by private party involves state action if claimed deprivation resulted from exercise of a right or privilege having its source in state authority); West v. Atkins, 487 U.S. 42, 54 [] (1988) (a private physician under contract with a state to provide medical services to inmates was a state actor for purposes of section 1983).

Lopez v. Dep't of Health Servs., 939 F.2d 881, 883 (9th Cir. 1991). Simply receiving government funds or complying with government regulations does not convert a private individual or entity into a state actor unless the government – through its funding or regulatory mechanisms – exercised coercive power and can be said to have controlled the choices that led to plaintiff's injury. Rendell-Baker v. Kohn, 457 U.S. 830, 839-43 (1982). Plaintiff has not alleged any facts which could give rise to a plausible inference that defendants are state actors for purposes of her constitutional claims.

**B. Antitrust Claims**

In order to state an antitrust claim under federal law, plaintiff must plead sufficient facts to state a plausible antitrust injury. "Antitrust injury" means "injury of the type the antitrust laws were intended to prevent and that flows from that which makes defendants' acts unlawful." Brunswick Corp. v. Pueblo Bowl–O–Mat, Inc., 429 U.S. 477, 489 (1977). Congress designed the antitrust laws as a "consumer welfare prescription" that prohibit commercial practices either interfere with the allocation of

ORDER REGARDING
PENDING MOTIONS
-4-

economic resources to their best use and adversely impact consumer pricing or quality. See Reiter v. Sonotone Corp., 442 U.S. 330, 343 (1979); National Gerimedical Hosp. and Gerontology Ctr. v. Blue Cross of Kansas City, 452 U.S. 378, 387–88 & n. 13 (1981); Products Liab. Ins. Agency, Inc. v. Crum & Forster Ins. Cos., 682 F.2d 660, 663-64 (7th Cir. 1982). "Accordingly, an act is deemed anticompetitive under the Sherman Act only when it harms both allocative efficiency and raises the prices of goods above competitive levels or diminishes their quality." Rebel Oil Co. v. Atl. Richfield Co., 51 F.3d 1421, 1433 (9th Cir. 1995).

Plaintiff alleges that the various defendants have engaged in discriminatory, unfair, and unethical business practices which have limited her ability to compete in interstate commerce. No facts are provided to support the conclusory statement regarding restrictions on interstate competition, nor do the events from which plaintiff's claims arise support the allegation. Plaintiff identifies no market from which she was excluded, no conduct that restrained trade, and no plausible injury to competition or consumer welfare. Race discrimination, while odious, is not an antitrust injury unless and until it causes a loss that flows from an anticompetitive aspect or effect of the defendants' behavior. Atlantic Richfield Co. v. USA Petroleum, Inc., 495 U.S. 328, 334 (1990). Plaintiff has failed to allege a plausible antitrust claim.

**C. Federal Trade Commission Act**

Plaintiff concedes that there is no private right of action under the Federal Trade Commission Act.

**D. Fair Housing Act, Title VIII of the Civil Rights Act of 1968**

The Fair Housing Act ("FHA") prohibits discrimination "against any person in the terms, conditions, or privileges of sale or rental of a dwelling, or in the provision of

ORDER REGARDING
PENDING MOTIONS

-5-

services or facilities in connection therewith, because of" race or disability. 42 U.S.C. § 3604(b) and (f)(2). Although only some of the defendants addressed this claim in their motion to dismiss,[2] to the extent the sufficiency of the pleading is at issue, the analysis applies to all defendants at this stage of the proceeding. AUM argues that plaintiff has not adequately alleged a disparate impact claim under the FHA. That may be true: plaintiff has not alleged an outwardly neutral policy that disparately impacts minority or disabled residents of her apartment building. Instead, she has alleged a disparate treatment claim based on a coordinated effort to charge her higher rates for her utilities because of her race and/or disability. Claims of intentionally discriminatory conduct need not be based on a neutral policy.

AUM and Ms. Spagnola also argue that the allegations are conclusory and therefore insufficient under Fed. R. Civ. P. 8. Plaintiff has alleged that she is part of two protected classes, that she was charged more for services related to her rental unit because of her race and/or disability, and that other tenants not in the protected classes are charged lower rates. In addition, plaintiff alleges facts suggesting that the charges were not mere error: defendants refused to explain or justify the excessive charges, despite many opportunities to do so, even though the failure to provide a justification violates the Seattle Municipal Code. Whether plaintiff can prove these allegations is not the issue on a motion to dismiss. Plaintiff has alleged a plausible claim for relief under the FHA.

**E. Title VI Discrimination Claims**

Title VI of the Civil Rights Act of 1964 provides that no person may "on the

---

[2] Security Properties Residential, LLC, and Ms. Simpson acknowledge plaintiff's FHA claim (Dkt. # 53 at 4), but make no argument in support of its dismissal.

ORDER REGARDING
PENDING MOTIONS

ground of race, color, or national origin, be excluded from participation in, be denied the benefits of, or be subjected to discrimination under any program or activity receiving Federal financial assistance." 42 U.S.C. § 2000d. Defendants point out that there are no allegations regarding receipt of federal financial assistance in the Second Amended Complaint. In response, plaintiff asserts that Security Properties Residential, LLC, is directly "tied to federal assistance, and combinations of block grants from the state and local governments, especially, with respect to the City of Seattle's Seattle Public Utilities' Utility Discount Program." Dkt. # 64 at 9-10.

It is entirely possible that a multi-family housing unit in Seattle may have received some form of federal financial assistance that could subject it to regulation under Title VI, but plaintiff has not alleged such assistance in her complaint. Her vague assertion that one defendant has a "tie" to federal assistance - supported only by references to state and local subsidies and programs - suggests that she is unaware of any actual federal payments. Whether leave to amend her Title VI claim against Security Properties Residential, LLC, is appropriate is considered below. Regardless, her Title VI claim against the other defendants fails as a matter of law: plaintiff does not allege or argue that the other individual and corporate defendants received federal funds. See Drawsand v. F.F Props., LLP, 866 F. Supp.2d 1110, 1122 (N.D. Cal. 2011) ("In a Title VI claim, the proper defendant is the entity receiving federal funds, not the employees who are employed by the entity.").

**F. Section 504 of the Rehabilitation Act**

Section 504 provides that "[n]o otherwise qualified individual with a disability . . . shall, solely by reason of her or his disability, be excluded from the participation in, be denied the benefits of, or be subjected to discrimination under any program or activity

ORDER REGARDING
PENDING MOTIONS

-7-

receiving Federal financial assistance." 29 U.S.C. § 794(a). This claim fails for the same reason the Title VI claim fails: plaintiff has not alleged that any of the defendants received federal funds.

**G. Title I of the Housing and Community Development Act**

The primary objective of the Housing and Community Development Act is "the development of viable urban communities, by providing decent housing and a suitable living environment and expanding economic opportunities, principally for persons of low and moderate income." 42 U.S.C. § 5301(c). To accomplish that objective, Congress allocated federal funds to the states and local units of government to use for the support of activities that benefit persons of low and moderate income and certain types of community development activities. Id. Section 109 of the Act prohibits race, color, national origin, religion, or sex-based discrimination "under any program or activity funded in whole or in part with funds made available under this chapter." 42 U.S.C. § 5309(a). Assuming, for purposes of this motion, that there is a private right of action under Title I, this claim fails for the same reason the Title VI claim fails: plaintiff has not alleged that any of the defendants received federal funds allocated under the Housing and Community Development Act.

**H. Architectural Barriers Act**

The Architectural Barriers Act "requires that buildings constructed or leased by the federal government be made accessible to handicapped persons." Rose v. U.S. Postal Serv., 774 F.2d 1355, 1356 (9th Cir. 1984). Plaintiff has not alleged that Angeline Apartments was constructed or leased by the federal government or that she encountered physical barriers to her ability to access the building. She has not, therefore, stated a plausible claim for relief under the statute.

ORDER REGARDING
PENDING MOTIONS

**I. Age Discrimination Act of 1975**

This statute provides that "no person in the United States shall, on the basis of age, be excluded form participation in, be denied the benefits of, or be subjected to discrimination under, any program or activity receiving Federal financial assistance." 42 U.S.C. § 6102. This claim fails for the same reason the Title VI claim fails: plaintiff has not alleged that any of the defendants received federal funds.

**J. Americans with Disabilities Act**

The sum total of plaintiff's allegations related to her claim under the Americans with Disabilities Act ("ADA") is that:

- she has "a left-side deficit;"

- defendants charged her "excessively and inordinately" for utility services "because of my race and disability;" and

- the Act "provides civil rights protections to individuals with disabilities and guarantees equal opportunity in public accommodations, employment, transportation, state and local government services, and telecommunications."

Dkt. # 52 at 9, 12, and 30. Although the Second Amended Complaint fails to specify the nature of plaintiff's ADA claim, in her response to the motions to dismiss, plaintiff makes clear that she is alleging discrimination in public accommodation. Title III of the ADA prohibits disability discrimination "in the full and equal enjoyment of the goods, services, facilities, privileges, advantages, or accommodations of any place of public accommodation by any person who owns, leases (or leases to), or operates a place of public accommodation." 42 U.S.C. § 12182(a). Places of "public accommodation" include not only publicly owned buildings and spaces, but also privately owned facilities

that affect commerce. See 42 U.S.C. § 12181(7). The term is defined to include "an inn, hotel, motel, or other place of lodging," but the legislative history clarifies that "other place of lodging" does not include residential facilities. 42 U.S.C. § 12181(7)(A); H.R. Rep. No. 101-485(II), 101st Cong., 2d Sess. 383 (1990). See also Glasby v. Mercy Hous., Inc., No. C17-2153-DMR, 2017 WL 4808634, at *5 (N.D. Cal. Oct. 25, 2017).

Plaintiff's ADA claim is based on the mistaken assumption that the Angeline Apartments are a "public accommodation," from which she then argues that she has been deprived of a service offered by the apartment managers, namely the utility billing information required by SMC 7.25. Because the underlying assumption is wrong, plaintiff's ADA claim fails as a matter of law.[3]

**K. Title VII Claim**

Title VII of the Civil Rights Act of 1964 prohibits employment discrimination. Plaintiff has not alleged that she was an employee of any of the defendants and has not responded to defendants' motion to dismiss this claim.

**L. Civil Conspiracy to Commit Fraud**

To the extent plaintiff intended to allege a state law claim of civil conspiracy, it has not been sufficiently pled.[4] Plaintiff alleges that each defendant engaged in a civil conspiracy, separately alleging that one or more defendants "conspir[ed] to charge me, excessively and inordinately, high monthly utility charges." Dkt. # 52 at 20. She then

---

[3] Plaintiff has not alleged that any portion of the Angeline Apartments, such as the lobby or a parking lot, is open to the general public (in which case the ADA might apply to that area) or that her claims arise from a deprivation of access to or services available in those spaces. See El v. People's Emergency Ctr., 315 F. Supp.3d 837, 844 (E.D. Pa. 2018).

[4] Although only some of the defendants addressed this claim in their motion to dismiss, to the extent the sufficiency of the pleading is at issue, the analysis applies to all defendants at this stage of the proceeding.

ORDER REGARDING
PENDING MOTIONS

-10-

cites the elements of a conspiracy claim. There is no information regarding the alleged agreement, who was part of the agreement, when it was made, or any other fact that would give rise to an inference of concerted action rather than a mere business or employment relationship between defendants. In fact, plaintiff's allegations suggest that there was no conspiracy: her property manager, on behalf of one corporate defendant, attempted to help her unravel the mystery of her excessive utility bills by contacting the other corporate defendant. The allegations of the complaint are more consistent with independent action than a conspiracy and do not give rise to a plausible inference of liability on that claim.

**M. Leave to Amend**

Plaintiff's motion for leave to amend does not identify what changes she intends to make to the complaint or what additional facts she can allege in support of her claims. Because her FHA claim survives and this litigation will continue, leave to amend will not be blindly granted. If plaintiff believes she can, consistent with her obligations under Fed. R. Civ. P. 11, amend her complaint for a fourth time to remedy the pleading and legal deficiencies identified above, she may, within twenty-one days of the date of this Order, file a motion to amend and attach a proposed third amended complaint for the Court's consideration.

//

//

//

For all of the foregoing reasons, defendants' motions to dismiss (Dkt. # 53, 54, and 55) are GRANTED in part and DENIED in part. Plaintiff's Fair Housing Act claim may proceed against defendants Security Properties Residential, LLC, Amy Simpson, American Utility Management, Inc., and Jennifer Spagnola. All other claims are hereby DISMISSED. Plaintiff's motion to amend (Dkt. # 66) is DENIED.

Dated this 2nd day of January, 2019.

Robert S. Lasnik
United States District Judge

ORDER REGARDING
PENDING MOTIONS